IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JERALD CREWS | ) | |
| | ) | |
|     *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-04075-SRB |
| | ) | |
| CENTURION OF MISSOURI, LLC. | ) | Jury Trial Demanded |
| *et al.*, | ) | |
| | ) | |
|     *Defendants.* | ) | |

## AMENDED COMPLAINT

Jerald Crews, by and through undersigned counsel, alleges the following against Defendants, based upon personal knowledge as to his own acts and observations and based upon information and belief as to all other matters.

## THE PARTIES

1. Plaintiff Jerald Crews is a citizen of Missouri.

2. The State of Missouri is sued by virtue of its ownership and operation of the Fulton Reception and Diagnostic Center (FRDC), where many of these events occurred.

3. Michael Kehoe is the current Governor of the State of Missouri, and is sued in his official capacity as the owner and operator of FRDC.

1

4. Missouri Department of Corrections (MODOC) is the state law enforcement agency that operates state prisons in Missouri. It is a unit of the State of Missouri.

5. Centurion of Missouri, LLC, is a Missouri domestic limited liability company providing comprehensive medical, dental, and behavioral services to incarcerated people. It is believed to be a citizen of Missouri.

6. Mark Hudson is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Hudson is believed to be a Missouri citizen.

7. Crystal Jones is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Jones is believed to be a Missouri citizen.

8. David Neighbors is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Neighbors is believed to be a Missouri citizen.

9. Michelle Rogers is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Rogers is believed to be a Missouri citizen.

10. Angel Bauer is an employee of MODOC and a cook with MODOC and is believed to be a citizen of Missouri.

11. Tracy Johnson is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Johnson is believed to be a Missouri citizen.

12. Alfred Gerard Garcia, M.D., is an individual working either for MODOC or Centurion, and is involved in the provision of medical treatment at FRDC. Garcia is believed to be a Missouri citizen.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction under Mo. Const. Art. V, § 14, and RSMo 478.070.

14. Venue is proper in this Court as Mr. Crews was first injured at FRDC, which is located in Callaway County, Missouri. Mr. Crews reserves the right to request a transfer of venue under Mo. S. Ct. R. 57.03.

## FACTS

15. In March 2024, Jerald Crews was incarcerated at Fulton Reception and Diagnostic Center (FRDC).

16. On or about March 25, 2024, Mr. Crews fractured the index finger on his right hand while working in the Food Service Steam Room, racking food trays for the dishwasher.

17. Mr. Crews immediately reported the injury to his supervisor, Angel Bauer, a cook for the Missouri Department of Corrections. Mr. Crews asked Ms. Bauer if he could go to the medical center.

18. Ms. Bauer told Mr. Crews to go back to work. She promised to come get him in a few minutes to fill out an accident report.

19. Ms. Bauer did not fulfill her promise.

20. Mr. Crews completed his shift in a great deal of pain.

21. After his shift ended, Mr. Crews self-declared a medical emergency so he could go to the medical center. His finger was clearly broken and bent sideways. The finger and part of his hand were already severely swollen and developing a bruise.

22. At the medical center, E.R. Nurse Crystal Jones denied Mr. Crews any medical treatment because he did not have an accident report. She told Mr. Crews to fill out a Health Service Request, and sent him on his way.

23. Mr. Crews returned to work the next day in extreme pain.

24. Again, Mr. Crews approached Ms. Bauer, and asked her to fill out an accident report and send him to the medical center.

25. Ms. Bauer told Mr. Crews to begin working, and promised to get him in a few minutes with an accident report.

26. Ms. Bauer never brought him a medical report.

27. At the end of this shift, Mr. Crews self-declared a medical emergency again. By then, his hand was throbbing and in extreme pain. It was severely swollen and bruised.

28. At the medical center, Ms. Jones denied Mr. Crews treatment again. She had him fill out another Health Service Request.

29. Over the next nine days, Mr. Crews filled out eight Health Service Request forms.

30. Mr. Crews did not receive any medical attention until April 3, 2024, nine days after the initial injury.

31. David Neighbors ordered an X-ray of Mr. Crews's finger and put in a referral to Centurion for an emergency appointment with a hand surgeon.

32. Mr. Neighbors told Mr. Crews that if an accident report had been filed the day of the injury, Mr. Crews would have been sent straight to the hospital. Since the report had not been made, the X-ray and referral were the best course of action.

33. The Missouri Department of Corrections did not give Mr. Crews the X-ray until April 25, 2024 — 22 days after Mr. Neighbors ordered it and 31 days after the initial injury.

34. Radiology Technician Michelle Rogers performed the X-ray.

35. The healthcare staff took two weeks to return the results of the X-ray.

36. On May 9, Mr. Neighbors called Mr. Crews to his office to discuss the results of the X-ray. He confirmed that Mr. Crews's right index finger was fractured with massive joint destruction in the first and second knuckles.

37. Mr. Neighbors informed Mr. Crews that he was still waiting for Centurion to approve Mr. Crews's appointment with the hand surgeon.

38. At this point, six weeks after the initial injury, Mr. Crews was still experiencing extreme pain. His finger was still severely swollen and bruised.

39. Immediately after the meeting with Mr. Neighbors, Mr. Crews decided to file an Informal Resolutions Request to try to speed up his medical treatment.

40. On May 28, 2024, Mr. Crews was called back to the medical center to discuss his Informal Resolutions Request.

41. Mark Hudson attended the meeting and promised to get Mr. Crews to a hand surgeon in 14 days or less.

42. On May 31, 2024, Mr. Crews filed a formal Grievance with FRDC.

43. On June 13, 2024, Mr. Crews sent a message to Mr. Hudson. It had been 16 days since their meeting and he had not heard anything about his appointment with a hand surgeon. He asked Mr. Hudson to try to get his appointment scheduled.

44. On June 17, 2024, Mr. Hudson responded with a signed letter stating that he had checked on Mr. Crews's referral and that Centurion still had not approved the appointment.

45. On June 20, 2024, Mr. Crews met with Tracy Johnson, a mental health professional employed by the Missouri Department of Corrections. Mr. Crews explained the major emotional distress his injury had caused.

46. The Missouri Department of Corrections did not take Mr. Crews to see a hand surgeon until August 12, 2024, almost five months after his injury.

47. Dr. Joyce Wilson conducted a consultation appointment with Mr. Crews. She X-rayed his finger three times and examined it visually.

48. She explained to Mr. Crews that if she had seen him at the time of the injury, she could have saved the mobility in his finger. She also could have helped him avoid much of the pain and anguish.

49. By the time of the consultation, Mr. Crews's fracture had healed with the joint misaligned.

50. His only options at this point were to permanently fuse it straight with screws and a metal plate or to amputate it.

51. After months of struggling to receive medical treatment, Mr. Crews did not want to risk any complications with fusing his finger straight.

He knew that metal would be painful in cold months for the rest of his life and fusing his finger involved a longer recovery period.

52. Dr. Garcia began supervising Mr. Neighbors in 2014. As a supervising physician, Dr. Garcia was responsible for ensuring that Mr. Neighbors and Mr. Hudson maintained standard basic practice habits related to history taking, documentation, and speciality referrals. Dr. Garcia failed to ensure that Mr. Neighbors met standard basic practice habits.

53. On August 14, 2024, Mr. Hudson and Mr. Neighbors apologized to Mr. Crews for his finger being amputated and for all the pain and suffering he endured for the last five months due to his appointment never getting approved in time by Centurion.

54. Mr. Crews has a family with four children at home to provide for, but it is now going to be very difficult given than Mr. Crews cannot perform his former work of being a meat cutter.

55. Mr. Crews is still in extreme pain; his finger is still swollen and bruised and will not bend.

56. Mr. Crews has suffered both financial losses in the form of medical bills and lost wages and earning capacity, and distress from physical and mental pain and suffering.

## COUNT I
## NEGLIGENCE
### (against State, Kehoe, MODOC, and Bauer)

57. Plaintiff incorporates each and every allegation of this Petition as if set forth here.

58. The State of Missouri, the Missouri Department of Corrections, Kehoe (in his official capacity),[1] and Bauer had a heightened duty of care, or alternatively a duty of reasonable care, in managing their facilities and their dealings with Plaintiff, and to maintain the kitchen in a reasonably safe manner.

59. The State of Missouri, the Missouri Department of Corrections, Kehoe, and Bauer waived sovereign immunity. They were aware of the dangerous condition at FRDC, that the dangerous condition created a reasonably foreseeable risk of harm of the kind caused to Mr. Crews, and that the negligent or wrongful act or omission of Defendants within the course of their employment created the dangerous condition. Alternatively, the State of Missouri, the Missouri Department of Corrections, Kehoe, and Bauer had actual or constructive notice of the dangerous condition in sufficient time prior to Mr. Crews injury to take steps to protect him against the condition.

60. Defendants breached that duty by failing to maintain the safety of the kitchen, and failing to promptly take care of Mr. Crews's medical needs.

---

[1] Kehoe succeeds to the liabilities and title of Michael Parson, who was Governor at the time of the operative events here.

61. Defendants' actions and/or omissions were an actual cause of Plaintiff suffering personal injuries.

62. As a direct and proximate result, Plaintiff has sustained damage – including both physical and emotional injury – that was foreseeable to Defendants.

63. Defendants' conduct was outrageous in that it showed willful and reckless indifference to Plaintiff's rights and/or evil motive.

64. Defendants acted toward Plaintiff in a willful, wanton, and/or malicious manner.

65. Plaintiff respectfully prays that this Court adjudges Defendants liable for negligence and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT II
## MALPRACTICE/PROFESSIONAL NEGLIGENCE
### (against Centurion, State, MODOC, Hudson, Jones, Rogers, Johnson, Neighbors, and Garcia)

66. Plaintiff incorporates each and every allegation of this Petition as if set forth here.

67. Defendants owed Mr. Crews a duty of acting with the requisite degree of skill that correctional health care and/or emergency health care providers would show under like circumstances.

68. Defendants breached this duty by, among other things, not providing prompt medical care, not conducting the proper treatment for Mr.

10
Case 2:25-cv-04075-SRB    Document 38    Filed 08/01/25    Page 10 of 14

Crews's finger, not performing diagnostic procedures properly and reporting their results in a timely manner, failing to supervise, and not transferring Mr. Crews to a specialist in a timely manner.

69. The State of Missouri, the Missouri Department of Corrections, Kehoe, and Bauer waived sovereign immunity. They were aware of the dangerous condition at FRDC, that the dangerous condition created a reasonably foreseeable risk of harm of the kind caused to Mr. Crews, and that the negligent or wrongful act or omission of Defendants within the course of their employment created the dangerous condition. Alternatively, the State of Missouri, the Missouri Department of Corrections, Kehoe, and Bauer had actual or constructive notice of the dangerous condition in sufficient time prior to Mr. Crews injury to take steps to protect him against the condition.

70. As a direct and proximate result, Plaintiff has sustained both economic loss and pain and suffering that was foreseeable to Defendants.

71. Defendants' conduct was outrageous in that it showed willful and reckless indifference to Plaintiff's rights and/or evil motive.

72. Plaintiff respectfully prays that this Court adjudges Defendants liable for professional negligence and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

### COUNT III
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS 42 U.S.C. 1983

**(against all Defendants)**

73. Plaintiff incorporates each and every allegation of this Petition as if set forth here.

74. The Eighth Amendment of the United States Constitution, as incorporated against the States under the Fourteenth Amendment's Due Process Clause, requires adequate attention to the serious medical needs of inmates.

75. Defendants violated Mr. Crews's civil rights by denying him basic and procedural medical care after being injured.

76. Defendants acted with deliberate indifference to Mr. Crews's serious medical needs.

77. As a direct and proximate result, Plaintiff has sustained damage that was foreseeable to Defendants.

78. Defendants' conduct was outrageous in that it showed willful and reckless indifference to Plaintiff's rights and/or evil motive.

79. Plaintiff respectfully prays that this Court adjudges Defendants liable for violation of Section 1983 and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully prays that this Court grant him the following relief, in an amount that is fair and reasonable and is believed to be in excess of $75,000:

1. Actual damages, including damages for economic loss, medical bills, lost wages, lost earning capacity, and pain and suffering, in an amount that is fair and reasonable;

2. Punitive damages in an amount that is fair and reasonable,

3. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

4. Declaratory and injunctive relief, including but not limited to tax adjustments of amounts awarded, to make Plaintiff whole and prevent future violations of the law;

5. The costs of this action;

6. Reasonable attorney's fees to the extent permitted by law; and

7. Any other and further legal and/or equitable relief that this Court deems just and proper.

Dated: August 1, 2025

Respectfully submitted,
**KEENAN & BHATIA, LLC**

/s/ Aaron Hadlow

Edward (E.E.) Keenan (MO #62993)
Sonal Bhatia (MO #67519)

JR Montgomery (MO #68281)
Aaron Hadlow (MO #70987)
4600 Madison Ave., Ste. 810
Kansas City, MO 64112
(816) 809-2100
ee@keenanfirm.com
sonal@keenanfirm.om
jr@keenanfirm.com
aaron@keenanfirm.com
*Attorneys for Mr. Crews*

## **CERTIFICATE OF SERVICE**

I certify that on August 1, 2025, a copy of the foregoing was filed with the Court's ECF which delivered a notice of service to all counsel of record.

*/s/ Aaron Hadlow*
An Attorney for Plaintiff
